### PRATT & YOUNG, Inc., et al. v. SUSQUEHANNA COAL CO.

(District Court, D. Massachusetts. January 6, 1921.)

No. 1002.

1. **Sales** ⊂═219(3)—**Party electing to treat coal obtained by fraud as sold cannot sue third party for conversion.**

Where coal was obtained from defendant by the D. Co. by fraud, and thereafter, with full knowledge, defendant brought suit against the D. Co., alleging an agreement of settlement and nonperformance thereof, and that the D. Co. was indebted to it in a sum including the value of such coal, and obtained a decree establishing the indebtedness of the D. Co., and giving it an equitable lien on proceeds of sales of such coal, it definitely and finally elected to treat the coal as sold to the D. Co., and could not sue a third party for conversion of the coal as its property.

2. **Injunction** ⊂═26(6)—**Plaintiff held entitled to enjoin action at law, instead of presenting defense in such action.**

Where defendant, from whom the D. Co. obtained coal by fraud, had elected to treat the coal as sold to the D. Co., plaintiff could maintain a suit to enjoin defendant from suing plaintiff for conversion of the coal, instead of presenting such defense in the action at law; there being no real issue of fact, and the questions involved being purely legal.

In Equity. Suit by Pratt & Young, Incorporated, and others, against the Susquehanna Coal Company. On motion for an injunction. Motion allowed.

Henry F. Hurlburt and Damon E. Hall, both of Boston, Mass., for plaintiffs.

Hale & Dorr, of Boston, Mass., for defendant.

MORTON, District Judge. The facts are clear, and there is no serious controversy concerning them. The A. H. Dollard Coal Sales Company (which I shall call the Dollard Company) obtained by fraud from the Susquehanna Coal Company 93,756 tons 13 cwt. of anthracite coal, valued at $444,488.09. Thereafter, and with full knowledge of what had been done, the Susquehanna Coal Company brought a suit in equity against the Dollard Company in the United States District Court in the Southern District of New York. In the twenty-fourth paragraph of that bill the transactions as to said 93,756 tons were

specifically set out. It further alleged that an agreement in the nature of an agreement of settlement between the Dollard Company and the Susquehanna Coal Company was made after said fraud had been discovered, and that said agreement was not kept by the Dollard Company, which, notwithstanding repeated requests, had refused "to transfer and assign to this plaintiff [the Susquehanna Company] the accounts receivable due to it for coal sold to its customers which said defendant Sales Company [the Dollard Company] obtained and secured from the plaintiff [the Susquehanna Company] under the circumstances set forth in paragraph 24." The bill further charged that the Dollard Company was *"indebted"* to the Susquehanna Company in the sum of $905,019.36, which included said sum of $444,488.09, interest on which was therein claimed. The prayers of the bill were, inter alia, that the amount of the indebtedness due to the plaintiff from the Dollard Company be ascertained and determined.

The defendant answered. Decrees were made establishing the indebtedness of the Dollard Company to the Susquehanna Company at $905,019.36, awarding interest on said sum of $444,488.09, which constituted part of said amount, from July 31, 1915, and giving to the Susquehanna Company "an equitable lien on the proceeds of the sales by the defendants or either of them of the 93,756 tons 13 cwt. of coal mentioned in the bill of complaint," with the right "to follow the proceeds of the sale thereof into the hands of the defendants, or either of them, or to collect from the persons to whom said coal was sold by the defendants, or either of them, any sums of money which remain unpaid by the purchasers thereof." This decree was assented to by the Susquehanna Company. A receiver of the property of the Dollard Company was appointed in the same suit, and was authorized to collect all sums due to the company; and a special master was also appointed for the carrying out of the decree.

[1] It is as plain as the English language can make it that the Susquehanna Company claimed that the value of the 93,756 tons 13 cwt. constituted an indebtedness to it from the Dollard Company, and has had that indebtedness included in the statement of accounts between them, and has procured from the New York court a decree establishing an equitable lien in its favor on the bills receivable of the Dollard Company arising out of the sales of this coal. The 45,600 tons of coal, for the conversion of which this suit is brought, were part of the 93,756 tons.

Under these circumstances, it seems to me clear that the present defendant definitely and finally elected to treat the coal fraudulently obtained from it as sold to and by the Dollard Company, and to work out its rights to the coal through the Dollard Company. It cannot both proceed against Pratt & Young through the Dollard Company to collect the bill for the coal as sold by the Dollard Company and also sue Pratt & Young for conversion of the same coal as its property.

The principles of law involved have been recently and fully stated by the Circuit Court of Appeals for this Circuit in Arzuaga v. Gonzalez, 239 Fed. 60, 152 C. C. A. 110. See, too, Briggs Iron Co. v. North & Co., 12 Cush. (Mass.) 114.

[2] The remaining question is whether, under Plews v. Burrage (C. C. A., 1st Cir., July 2, 1920) 266 Fed. 347, Pratt & Young must be left to make their defense in the action at law. I understand that decision to be based upon the view that, as a real issue of fact was raised by the plea of res judicata, the plaintiff in the action at law ought not to be deprived of the right to try that question to a jury. Here there is no real issue of fact. The questions involved are purely legal. They lie at the root of the controversy. To say that the parties can approach them only by way of long and expensive hearings before an auditor, and a long and expensive jury trial, while there is this simple and direct way to a decision of them, would be a discredit to the law. I do not think that Plews v. Burrage compels me to adopt that course.

Motion for injunction allowed.